UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK TIMES COMPANY and
MARA HVISTENDAHL,

                      Plaintiffs,

-against-

UNITED STATES DEPARTMENT OF
JUSTICE,

                      Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  2/21/2025
```

23 Civ. 4402 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiffs, the New York Times Company and Mara Hvistendahl,[1] bring this action against Defendant, the U.S. Department of Justice ("DOJ" or the "Government"), to challenge DOJ's nondisclosure of information requested by Plaintiffs under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See generally* Compl., ECF No. 1. All parties move for summary judgment. ECF Nos. 31, 36. For the reasons stated below, their motions are GRANTED IN PART and DENIED IN PART.

<b>BACKGROUND</b>

    I.    <u>Factual Background</u>

    In December 2021, DOJ's Office of the Inspector General ("OIG") published a summary of its investigation into allegations that Federal Bureau of Investigation ("FBI") officials committed misconduct overseas. *See generally* ECF No. 34-2. The summary disclosed that OIG had substantiated allegations against six FBI officials, finding that they had, *inter alia*, solicited, procured, and/or accepted commercial sex overseas, in violation of DOJ and FBI policies. *Id.* at 1. OIG also found that the officials had "lacked candor" or made false statements to OIG about their misconduct, in violation of FBI policies and federal law. *Id.* According to the

---

[1] Hvistendahl is an investigative reporter for the New York Times Company. Compl. ¶ 3, ECF No. 1.

summary, OIG completed its investigation and provided the underlying report (the "Report") to the FBI. *Id.* at 2. OIG did not publish the Report at that time. Def. Mem. at 2, ECF No. 32.

In early 2022, Plaintiffs made a FOIA request for the Report. Compl. ¶ 12. In response, OIG produced two partially redacted pages, withholding the rest of the 37-page Report under FOIA Exemptions 6, 7(A), 7(C), and 7(E). *See* ECF No. 1-1 at 1; Waller Decl. ¶¶ 8–9, ECF No. 34. Plaintiffs filed an administrative appeal, which the Government denied in April 2023. Compl. ¶¶ 14, 16.

II. Procedural Background

Plaintiffs commenced this action in May 2023. *See generally* Compl. In February 2024, after determining that Exemption 7(A) no longer applies to the Report, the Government produced the Report with certain information still redacted under Exemptions 6, 7(C), and 7(E). Def. Mem. at 3; Waller Decl. ¶¶ 12–13; ECF No. 34-8 (the produced 37-page Report). The parties move for summary judgment, disputing only the Government's redaction of information pursuant to Exemptions 6 and 7(C). Def. Mem. at 3; Pls. Mem. at 6, ECF No. 37. Specifically, Plaintiffs challenge the redaction of four categories of information (together, the "disputed information"):

    1. Locations (cities and countries) where the misconduct occurred;
    2. Dates (years) of all related events;
    3. Direct quotations, including those from interviews conducted during OIG's investigation; and
    4. Descriptions of unsubstantiated allegations against FBI officials and the reasons why OIG found them to lack merit.

Pls. Mem. at 3–4, 11–17.[2]

---

[2] Although Plaintiffs appear to also challenge the Government's redaction of "[d]escriptions of events individuals attended," "[c]ertain [other] descriptions," and "[s]ummaries, including of [OIG's] high-level findings, the outcome of a polygraph, and the allegations that originally led to the investigation," Pls. Mem. at 4, Plaintiffs advance no arguments for the disclosure of this information, *see id.* at 11–13; Def. Reply at 1, ECF No. 41. Accordingly, the Court need not address the propriety of nondisclosure of this information. *See Gonzalez v. Comm'r of Soc. Sec.*, No. 21 Civ. 800, 2022 WL 3348386, at *18 (S.D.N.Y. May 27, 2022) ("Courts have deemed arguments waived and

DISCUSSION

I. <u>Legal Standard</u>

    A. Summary Judgment

A party is entitled to summary judgment if it can establish that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of informing the Court of the absence of a genuine dispute of material fact by citing particular evidence in the record. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323–24. If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002). When, as here, the parties cross-move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

    B. FOIA

Congress enacted FOIA "to promote honest and open government and to assure the existence of an informed citizenry to hold the governors accountable to the governed." *Associated Press v. DOJ*, No. 06 Civ. 1758, 2007 WL 737476, at *3 (S.D.N.Y. Mar. 7, 2007)

---

have declined to address them where a party does not cite to any authority in support and does not develop its argument.").

(citation omitted). FOIA, therefore, calls for "broad disclosure of Government records." *N.Y. Times Co. v. DOJ*, 756 F.3d 100, 111 (2d Cir. 2014) (quoting *CIA v. Sims*, 471 U.S. 159, 166 (1985)). "Upon request, FOIA mandates disclosure of records held by a federal agency unless the documents fall within [the statute's] enumerated exemptions." *Associated Press*, 2007 WL 737476, at *3 (cleaned up) (citation omitted). "In accordance with FOIA's goal of broad disclosure, these exemptions have been consistently given a narrow compass." *Id.* (citation omitted).

On summary judgment, the Government bears "the burden of showing that a FOIA exemption applies to the withheld [information]." *Hum. Rts. Watch v. DOJ Fed. Bureau of Prisons*, No. 13 Civ. 7360, 2015 WL 5459713, at *4 (S.D.N.Y. Sept. 16, 2015) (citation omitted). The Government can sustain this burden through "[a]ffidavits or declarations . . . giving reasonably detailed explanations why any withheld [information] fall[s] within an exemption." *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994). Specifically, "[s]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009) (citation omitted). By contrast, "conclusory affidavits that merely recite statutory standards, or are overly vague or sweeping" do not "carry the [G]overnment's burden." *ACLU v. Dep't of Def.*, 435 F. Supp. 3d 539, 553–54 (S.D.N.Y. 2020) (citation omitted); *see Bloomberg L.P. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009) ("[C]onclusory or speculative assertions in support of an exemption are insufficient.").

"Summary judgment in favor of the FOIA plaintiff is appropriate when [the Government] seeks to protect material which, even on [its] version of the facts, falls outside the proffered exemption." *Bloomberg*, 649 F. Supp. 2d at 271 (alterations adopted) (citation omitted). In other words, if the Government "fails to meet its burden of showing that the requested information may be withheld, the [C]ourt may grant summary judgment" in favor of the party requesting the information. *Informed Consent Action Network v. U.S. Food & Drug Admin.*, No. 20 Civ. 689, 2022 WL 902083, at *2 (S.D.N.Y. Mar. 28, 2022).

The Government invokes Exemptions 6 and 7(C) to justify its redaction of the disputed information. Def. Mem. at 5. Exemption 6 protects information contained in "personnel and medical files and similar files" when disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). Both exemptions "are specifically aimed at protecting the privacy of personal information in government records." *Associated Press*, 2007 WL 737476, at *4.

The parties do not dispute that the withheld information is contained in a "similar file[]" under the meaning of Exemption 6 and was compiled for law enforcement purposes under the meaning of Exemption 7(C). *See BuzzFeed Inc. v. DOJ*, No. 21 Civ. 7533, 2022 WL 2223124, at *3 (S.D.N.Y. June 21, 2022). Although both exemptions are implicated in this case, "Exemption 7(C) is more protective of privacy than Exemption 6, because Exemption 7(C) applies to any disclosure that could reasonably be expected to constitute an invasion of privacy that is unwarranted." *Id.* (citation omitted). Accordingly, the Court need only evaluate the disputed information under Exemption 7(C). *See id.*

5

C.  Exemption 7(C)

A two-prong test governs the application of Exemption 7(C).  First, the Court must determine "whether there is any privacy interest in the information sought." *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 284 (2d Cir. 2009).  Second, "once a more than *de minimis* privacy interest is implicated," the Court must balance "the competing interests at stake . . . in order to decide whether disclosure is permitted under FOIA." *Id.* at 285 (citation omitted).

1.  Privacy Interest

Under Exemption 7(C), "privacy encompass[es] [an] individual's control of information concerning his or her person." *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989).  The privacy interest protected by Exemption 7(C) is, therefore, "an interest in 'avoiding disclosure of personal matters' and 'keeping personal facts away from the public eye.'" *Associated Press*, 554 F.3d at 286 (quoting *Reps. Comm.*, 489 U.S. at 762, 769).  This privacy interest "is particularly pronounced where disclosure could lead to embarrassment or retaliation." *Id*.  "This is true even when an individual is alleged to have committed substantial misconduct." *BuzzFeed*, 2022 WL 2223124, at *3.

Accordingly, the "identification of an officer or third party involved in an investigation implicates privacy interests because it could lead to 'embarrassment' or 'harassment,' and the privacy interests are 'even stronger . . . insofar as the material in question demonstrates or suggests that they had at one time been subject to criminal investigation.'" *N.Y. Times Co. v. FBI*, No. 21 Civ. 10888, 2023 WL 5955843, at *6 (S.D.N.Y. Sept. 13, 2023) (quoting *Halpern v. FBI*, 181 F.3d 279, 297 (2d Cir. 1999)); *see also Perlman v. DOJ*, 312 F.3d 100, 107 (2d Cir. 2002) (stating that "a government employee who is the subject of an investigation possesses a strong privacy interest in avoiding disclosure of the details of the investigation"), *vacated on other grounds*, 541 U.S. 970 (2004), *reaff'd on remand*, 380 F.3d 110 (2d Cir. 2004).  This

6

privacy interest increases when the officer retires and becomes a private citizen. *See BuzzFeed*, 2022 WL 2223124, at *3.

Although this privacy interest "can be triggered by the identification of a person by name, it can also be triggered by identifying details of an event." *N.Y. Times*, 2023 WL 5955843, at *6. What constitutes identifying information "must be weighed not only from the viewpoint of the public, but also from the vantage of those who would have been familiar." *Id.* (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 380 (1976)). Accordingly, "a subject has a privacy interest not just in personally identifying information, but also in information that, if revealed, might lead to the subject's identification by someone familiar with the subject matter." *Sorin v. DOJ*, 280 F. Supp. 3d 550, 565 (S.D.N.Y. 2017); *see also Hum. Rts. Watch*, 2015 WL 5459713, at *6.

2. Public Interest

Once a privacy interest is implicated, the Court must "balance the public interest in disclosure against the [privacy] interest Congress intended" Exemption 7(C) to protect. *Reps. Comm.*, 489 U.S. at 776. Exemption 7(C) "requires the [party] requesting the information to establish a sufficient reason for the disclosure." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004). First, the requesting party "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake." *Id*. Second, the requesting party must show that "the information is likely to advance that interest." *Id*. "Otherwise, the invasion of privacy is unwarranted." *Id*.

7

II.  Analysis

    A.  Categories 1–3: Locations, Dates, and Direct Quotations

        1.  Privacy Interest

DOJ argues that disclosure of categories 1–3 of the disputed information "could reasonably be expected to identify the subjects" of the Report, and that the subjects have a privacy interest in not being publicly identified. Def. Mem. at 9, 11. The Court agrees.

The Report's subjects have a privacy interest in avoiding disclosure of their identities. The Report discusses the subjects' serious misconduct and reveals "sexual, highly embarrassing details relating to the subjects." Waller Decl. ¶ 18; First Seidel Decl. ¶ 21, ECF No. 33 ("Being identified as a subject of an OIG investigation carries a strong negative connotation and a stigma, especially considering the nature of the misconduct at issue."); *see also BuzzFeed*, 2022 WL 2223124, at *3 ("[T]he reputational harm, embarrassment, and potential retaliation that the [s]ubject[s] would face from the disclosure of [their] identity are privacy interests recognized by Exemption 7(C)."); *Associated Press*, 554 F.3d at 286; *N.Y. Times*, 2023 WL 5955843, at *6. And, "the subjects' privacy interests are made more significant by the fact that six of them are now former [government] employees," having "retired, resigned, or been removed." Waller Decl. ¶ 18; *see also BuzzFeed*, 2022 WL 2223124, at *3 ("The [s]ubject's privacy interest is increased because he has retired and is now a private citizen.").

The Government has explained, in reasonably specific detail, how categories 1–3 of the disputed information, if revealed, might lead to the subjects' identification. *See Wilner*, 592 F.3d at 73; *Sorin*, 280 F. Supp. 3d at 565. As to the first two categories, the locations and dates of the misconduct, the Government states that "[t]he subjects . . . held job titles in locations where, in any given year, only approximately 20 FBI officials were collectively posted;" that "at the [locations] where misconduct occurred, only a handful of FBI employees were present;" and that

8

the Report "as released provides significant detail about the misconduct." First Seidel Decl. ¶¶ 22, 24. In light of this, the Government explains, the dates and locations of the misconduct "could reasonably be expected to allow members of the public, especially those with knowledge either of the conduct itself, or of the FBI's operations in the specific locations at the specific times mentioned, to identify the subjects." *Id.*; *see also* Waller Decl. ¶ 19 ("[I]ndividuals with relevant knowledge of the matters described in the Report or of the FBI's operations during the relevant time[s] and place[s] could combine their knowledge with the withheld information to identify the subjects.").

As to the third category, the subjects' direct quotations, the Government explains that, for the reasons stated above, "it is likely that individuals familiar with the FBI's operations during the relevant times and places—or who have some knowledge of the misconduct itself—could use [the Report's] information alongside the direct quotations to identify the [subjects], based both on the contents of the material and on the individuals' specific mannerisms or speech patterns." First Seidel Decl. ¶ 24; Second Seidel Decl. ¶ 5, ECF No. 42 ("[I]f these quotations were released, these quotations could reasonably be expected to link the quoted language to the specific speaker involved in the OIG investigation, not only by discussing specific events and thought processes, but by divulging the speech patterns and word choice[s] of the individuals, including the idiosyncratic phrasing used in the conversation[s].").

The Government has met its burden of providing "reasonably detailed explanations," *Carney*, 19 F.3d at 812, why the first three categories of the disputed information, if revealed, might lead to the subjects' identification, *see Sorin*, 280 F. Supp. 3d at 565. The Government sets forth a plausible explanation: Given the small number of FBI agents present at the relevant locations on the relevant dates, those familiar with the FBI's operations, the subjects, their misconduct, or OIG's investigation could use the relevant dates, locations, or direct quotations,

9

alongside the information already disclosed in the Report, to identify the Report's subjects. *See Wilner*, 592 F.3d at 73 (stating that the Government's justification is "sufficient if it appears logical or plausible" (citation omitted)); *Sorin*, 280 F. Supp. 3d at 565 (finding sufficient DOJ's explanation that those with knowledge of a company's operations might identify interviewees based on their statements); *Hum. Rts. Watch*, 2015 WL 5459713, at *6 (finding a privacy interest when, "even though the information sought [did] not identify [the subjects] by name," a familiar "reader could put together the mosaic of information about each [subject] [and] identify them"). Accordingly, the Government's "statement[s] [are] sufficient to show that the privacy interest DOJ seeks to protect extends not just to [] explicit identifying information but also to" the first three categories of disputed information. *Sorin*, 280 F. Supp. 3d at 565.

For the foregoing reasons, the subjects of the Report have a privacy interest in the first three categories of disputed information.³ Accordingly, the Court turns to the public interest in disclosure of this information. *See Reps. Comm.*, 489 U.S. at 776.

2. Public Interest

Plaintiffs identify a significant public interest in Government accountability and transparency. Pls. Mem. at 7. Indeed, "[i]t is axiomatic that the public possesses a strong interest and right to be informed about what their government is up to." *BuzzFeed, Inc. v. DOJ*, No. 17 Civ. 7949, 2019 WL 1114864, at *5 (S.D.N.Y. Mar. 11, 2019) (cleaned up) (citation omitted); *see also Associated Press*, 554 F.3d at 285 ("As for the public interest against which the privacy interest is to be weighed, the Supreme Court has made clear that there is only one

---

³ Indeed, Plaintiffs do not argue that the subjects of the Report have no privacy interest; rather, Plaintiffs argue that the Government "fails to show a substantial privacy interest is at stake." Pls. Reply at 1, ECF No. 43 (capitalization altered); Pls. Mem. at 13 (describing the subject's privacy interest as "minimal"). It is well-settled, however, that a privacy interest "need only be more than *de minimis*." *Associated Press*, 554 F.3d at 286; *Fed. Lab. Rels. Auth. v. U.S. Dep't of Veterans Affs.*, 958 F.2d 503, 510 (2d Cir. 1992) ("FOIA requires only a measurable interest in privacy to trigger the application of the disclosure balancing tests.").

relevant interest, namely, 'to open [Government] action to the light of public scrutiny.'" (quoting *Reps. Comm.*, 489 U.S. at 772)). "Whether [this] public interest in disclosure warrants the invasion of personal privacy is determined by the degree to which disclosure would further the core purpose of FOIA, which focuses on 'the citizens' right to be informed about what their government is up to.'" *BuzzFeed*, 2019 WL 1114864, at *4 (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 177 (1991)).

Plaintiffs have established that disclosure of categories 1–3 of the disputed information is "likely to advance [the public] interest" in Government accountability and transparency. *See Favish*, 541 U.S. at 172. First, they explain that disclosure of the locations where the misconduct took place would help the public understand "whether [the misconduct] was limited to one city or country or if the [misconduct] was widespread within the [FBI];" "the degree to which officials' engagement in commercial sex was at odds with or undermined the [FBI]'s work to combat commercial sex work and sex trafficking;" and "the potential impact of [the] misconduct on national security and national interests in the country and region." Pls. Mem. at 11–12. Second, Plaintiffs contend that disclosure of the dates of the misconduct would aid the public in understanding "when [the] misconduct first occurred and how long it was perpetuated; when it was first reported and how long it took before it was investigated; when the [OIG] investigation began and whether it was pursued expeditiously; and whether misconduct continued even after it had been reported and while an investigation was ongoing." *Id.* at 12. Third, Plaintiffs argue that redaction of direct quotations from OIG interviews forces the public to "rely on the [OIG]'s conclusions regarding the meaning or impact of the statements," and that the statements' disclosure would help the public "understand[] the evidentiary basis for the Report's findings and the rigor of the investigation itself." *Id*. Plaintiffs have thus shown how the information

11

sought would "further[] FOIA's main purpose of opening agency action to the light of public scrutiny." *BuzzFeed*, 2019 WL 1114864, at *8 (citation omitted).

According to the Government, the subjects' privacy interest outweighs the public interest in disclosure. Def. Mem. at 12. The Government relies on the FBI's conclusions that the dates and locations of the misconduct "would not add meaningfully to the public's understanding of the misconduct;" that "disclosing that the misconduct occurred suffices to inform the American public of the violation of DOJ policy" because "misconduct related to commercial sex is prohibited by DOJ policy in all countries;" that "nothing in the withheld information suggests a country-specific risk to FBI operations;" and that the direct quotations are "cumulative." First Seidel Decl. ¶¶ 23–24; Def. Mem. at 12–14.

Although Government affidavits are "accorded a presumption of good faith," *N.Y. Times*, 2023 WL 5955843, at *4 (quoting *Wilner*, 592 F.3d at 69), the FBI's affidavit, on which DOJ relies, makes only conclusory assertions that, based on its own balancing of the interests at stake, disclosure of categories 1–3 of the disputed information "would not add meaningfully to the public's understanding of the misconduct at issue," First Seidel Decl. ¶ 23; Def. Mem. at 12. But "conclusory . . . assertions in support of [a FOIA] exemption are insufficient," and all doubts surrounding the applicability of an exemption are to be "resolved in favor of disclosure." *Bloomberg*, 649 F. Supp. 2d at 271 (citation omitted). The dates and locations of the misconduct, and the direct quotations from OIG interviews, therefore, fall outside Exemption 7(C).

B.  Category 4: Unsubstantiated Allegations

Next, Plaintiffs seek disclosure of the unsubstantiated allegations against FBI officials and the reasons why OIG found them unsubstantiated. Pls. Mem. at 4. The subjects of the Report "have an interest in protecting their reputation from being associated with unsubstantiated

12

allegations of misconduct." *BuzzFeed*, 2019 WL 1114864, at *9; *see Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984) (finding that disclosure of information about the subjects of an investigation that resulted in no prosecution "may make those persons the subjects of rumor and innuendo, possibly resulting in serious damage to their reputations"). The public interest in unsubstantiated allegations of misconduct "consist[s] of an interest in ensuring that the OIG conducted a proper investigation of the additional allegations of misconduct." *BuzzFeed*, 2019 WL 1114864, at *9. But "absent evidence of material impropriety" by OIG, "the public interest in second-guessing [] OIG's investigation is accorded no weight in the balancing of interests under Exemption 7(C)." *Id.*; *see id.* ("Allegations of impropriety in the course of an investigation are 'easy to allege and hard to disprove,' and thus 'courts must insist on a meaningful evidentiary showing' supporting such allegations before a FOIA requestor can overcome a privacy interest protected by Exemption 7(C)." (quoting *Favish*, 541 U.S. at 175)). Because Plaintiffs offer no such evidence of impropriety, there is no cognizable public interest in the unsubstantiated allegations or the reasons why OIG found them unsubstantiated. *See id.* at *10. Plaintiffs' request for this information is, therefore, denied.

## CONCLUSION

For the foregoing reasons, the motions for summary judgment are GRANTED IN PART and DENIED IN PART. By March 31, 2025, DOJ shall provide Plaintiffs with a copy of the Report that contains the countries and cities where misconduct took place, the years when the misconduct occurred, and the direct quotations from OIG interviews.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 31 and 36 and close the case.

SO ORDERED.

Dated: February 21, 2025
New York, New York

_____
ANALISA TORRES
United States District Judge